**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------

WEIDONG LI, *on his own behalf and on
behalf of others similarly situated*,

Plaintiff,

v.                                    1:19-cv-00873 (AMN/CFH)

SPA NAIL 9, INC., *d/b/a Spa Nail 9*, DI
YANG, *a/k/a Peter Yang*, AMY YANG, *a/k/a
Cai Qin Wang*, and ANDY DOE,

Defendants.

------------------------------------------------------------

**APPEARANCES:**                              **OF COUNSEL:**

**TROY LAW, PLLC**                            **JOHN TROY, ESQ.**
41-25 Kissena Blvd., Suite 110                **AARON B. SCHWEITZER, ESQ.**
Flushing, NY 11355                            **TIFFANY TROY, ESQ.**
*Attorneys for Plaintiff*

**HARDING MAZZOTTI, LLP**                     **KELLY A. MAGNUSON, ESQ.**
P.O. Box 15141
1 Wall Street
Albany, NY 12212-5141
*Attorneys for Defendants Spa Nail 9, Inc.,
Di Yang, and Amy Yang*

**Hon. Anne M. Nardacci, United States District Judge:**

<strong>MEMORANDUM-DECISION AND ORDER</strong>

## I.   INTRODUCTION

Presently before the Court is Plaintiff's motion pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), and the New York Labor Law, N.Y. Lab. L. § 1 *et seq*. ("NYLL"), for $133,172.33 in attorney's fees and $5,561.10 in costs for his attorneys, Troy Law. Dkt. Nos. 147-49 (the "Motion"). Defendants oppose the Motion. Dkt. No. 152. For the reasons set forth below, the Motion is granted in part and denied in part.

## II.   BACKGROUND

The Court held a five-day jury trial in this matter from April 29 through May 3, 2024, at the conclusion of which the jury returned a verdict for Plaintiff Weidong Li ("Plaintiff") against Defendants Spa Nail 9, Inc., d/b/a Spa Nail 9, and Di Yang, a/k/a Peter Yang ("Defendant Yang") (collectively, "Defendants"), finding that Defendants had failed to pay Plaintiff adequate overtime wages, and that they failed to provide Plaintiff with an adequate wage notice or pay statements in violation of the NYLL.  Dkt. No. 139 at 2-4.[1]  The jury also found that Defendant Amy Yang, a/k/a Amy Wang or Cai Qin Wang ("Defendant Wang"), was not Plaintiff's employer as required for a finding of liability under the FLSA or NYLL, and that Defendants had not failed to pay Plaintiff minimum wage or spread of hours pay.  *Id*. at 2-3.  The jury awarded Plaintiff $3,874.50 in overtime damages, $4,800 in wage notice damages, and $5,000 in pay statement damages.  *Id*. at 4-5.  Following the completion of trial, the Court found that Defendants had not met their burden to show good faith to avoid liquidated damages and that Plaintiff was entitled to prejudgment interest under the NYLL, for a total Plaintiff's judgment of $19,913.22.  Dkt. Nos. 145-46.

## III.   STANDARD OF REVIEW

Attorney's fees and costs are recoverable by successful plaintiffs under both the FLSA and NYLL.  *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); N.Y. Lab. Law § 215(2)(a) (providing for "costs and reasonable attorneys' fees").  "Attorneys' fees are awarded by determining a presumptively reasonable fee, reached by multiplying a reasonable hourly rate by the number of reasonably expended hours."

---

[1] Citations to docket entries utilize the pagination generated by CM/ECF docketing system and not the documents' internal pagination.

*Yue Ping Sun v. Buffet Star of Vestal Inc.*, No. 3:14-CV-912 (BKS/DEP), 2017 WL 11296886, at *1 (N.D.N.Y. June 21, 2017) (quoting *Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289 (2d Cir. 2011)). "The party seeking fees bears the burden of establishing that the hourly rates and number of hours for which compensation is sought are reasonable." *Collado v. Donnycarney Rest. L.L.C.*, No. 14 Civ. 3899 (GBD) (HBP), 2015 WL 4737917, at *10 (S.D.N.Y. Aug. 10, 2015) (citing *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994)).

After calculating a presumptively reasonable fee, known as the lodestar, a "'district court may, in its discretion, adjust the lodestar based on a variety of factors,' but, 'must state its reasons for doing so as specifically as possible.'" *Perez v. Lasership, Inc.*, No. 3:15-MC-00031 (CSH), 2015 WL 8750965 (D. Conn. Dec. 14, 2015) (quoting *Ayres v. 127 Rest. Corp.*, 1999 WL 1295335, at *1 (2d Cir. Dec. 23, 1999)). "The lodestar is not 'conclusive in all circumstances,' and may be adjusted when it fails to 'adequately take into account a factor that may properly be considered in determining a reasonable fee.'" *S.F. v. New York City Dep't of Educ.*, No. 21 CIV. 11147 (PAE), 2023 WL 4531187, at *3 (S.D.N.Y. July 13, 2023) (quoting *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 167 (2d Cir. 2011)). In doing so, "'the most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). Finally, "[t]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection." *Hines v. City of Albany*, 613 F. App'x 52, 54 (2d Cir. 2015) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

## IV.   DISCUSSION

### A.   Plaintiff's Requested Attorney's Fees

In the Motion, Plaintiff seeks $133,172.33 in attorney's fees and $5,561.10 in costs, for a total attorney recovery of $138,733.43.  Dkt. No. 148 at 38.  To reach these sums, Plaintiff is requesting a regular hourly rate of $650 for Troy Law managing attorney John Troy ("Mr. Troy"), $400 per hour for managing associate Aaron Schweitzer ("Mr. Schweitzer"), $250 per hour for associate Tiffany Troy ("Ms. Troy"), and $200 per hour for managing clerk Preethi Kilaru ("Ms. Kilaru").  *Id.*  At these rates, Plaintiff requests compensation for 105.88 hours worked by Mr. Troy, 105.28 hours worked by Mr. Schweitzer, 35.51 hours worked by Ms. Troy, and 32.56 hours worked by Ms. Kilaru.  *Id.*  Additionally, Plaintiff requests attorney compensation for 15.33 hours Mr. Troy spent travelling at a reduced rate of $300 per hour, and 11.25 hours Mr. Schweitzer spent travelling at a reduced rate of $200 per hour.  *Id.*

Several courts in this Circuit have noted that "Troy Law's tarnished history compels the Court to scrutinize its fee applications in this or any other case with special care.  It also makes more egregious any repetition of the same criticism that Troy Law has received in other cases." *Panora v. Deenora Corp.*, No. 19-cv-7267 (BMC), 2021 WL 5712119, at *5-6 & n.3 (E.D.N.Y. Dec. 2, 2021) (collecting cases); *accord Sanchez v. 156-40 Grill LLC*, No. 15-CV-5081 (CBA) (LGD), 2024 WL 2855719, at *5 (E.D.N.Y. June 6, 2024); *Zang v. Daxi Sichuan, Inc.*, No. 18-CV-06910-DG-SJB, 2023 WL 2305934, at *3 n.2 (E.D.N.Y. Mar. 1, 2023).  As discussed at length below, Plaintiff's fee request in this case for work done by Troy Law is deserving of many of the same criticisms Troy Law has received in other cases.

### B.   Reasonable Hourly Rates

"A 'reasonable hourly rate' is 'the rate a paying client would be willing to pay.'"  *Buffet*

*Star of Vestal*, 2017 WL 11296886, at *2 (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)).  "The Second Circuit has held that in calculating the presumptively reasonable fee, 'courts should generally use the hourly rates employed in the district in which the reviewing court sits.'"  *Id.* (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)).  "A review of cases in this District indicates that the following hourly rates (or rate ranges) are reasonable: $275-$350 for experienced partners; $165-$200 for junior associates; and $90 for paralegals." *Yanchaliquin v. Chuqui Builders Corp.*, No. 1:23-CV-504 (BKS/CFH), 2023 WL 7299810, at *8 (N.D.N.Y. Nov. 6, 2023) (citation omitted).

Although not addressed in Plaintiff's request, it appears that Plaintiff's attorneys are seeking fees at rates commensurate with those awarded to them for work in other districts, in particular the Eastern and Southern Districts of New York, and state courts in those districts.  *See* Dkt. No. 149 at 9-11.  In the Second Circuit, "when faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule[;]" "[i]n order to overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons*, 575 F.3d at 175-76.  Plaintiff's attorneys have failed to make a particularized showing that no in-district counsel possessed comparable expertise, and as other courts in this District have observed, "even if there were no experienced in-district attorneys fluent in Chinese, such attorneys could have hired interpreters and perhaps produced the same result. Plaintiff['s] counsel have failed to meet their burden to show otherwise." *Buffet Star of Vestal*, 2017 WL 11296886, at *2 (citing, *inter alia*, *Green v. City of New York*, 403 F. App'x 626, 628 (2d Cir. 2010) ("Appellants have made no showing, beyond mere conjecture, that 'local counsel possessing requisite experience were unwilling or unable to

take the case,' or that no in-district counsel possessed expertise necessary to litigate the case.'") (quotation omitted)); *Pope v. County of Albany*, No. 11 Civ. 736, 2015 WL 5510944, at *9, (N.D.N.Y. Sept. 16, 2015) (rejecting higher rates where "Plaintiffs have not made a particularized showing that it was necessary for an out-of-district firm to be involved in this case")).[2]

As is discussed further below, the reasonableness of the rates requested by Plaintiff's attorneys has been the topic of innumerable other decisions by courts in this Circuit. *See, e.g.*, *Chen v. Hunan Manor Enterprise, Inc.*, 17 Civ. 802 (GBD) (GWG), 2024 WL 2140119, at *5-6, 9 (S.D.N.Y. May 14, 2024) (reducing Mr. Troy's hourly rate to $300 and Mr. Schweitzer's hourly rate to $200); *Chen v. Glow Asian Foods, Inc*., No. 19-cv-630 (ST), 2023 WL 6292576, at *3 (E.D.N.Y. Sept. 27, 2023) (reducing Mr. Troy's hourly rate to $325 and Mr. Schweitzer's hourly rate to $150); *Wang v. XBB, Inc.*, No. 18-CV-7341 (PKC) (ST), 2023 WL 2614143, at *8 (E.D.N.Y. Mar. 23, 2023), *reconsideration denied*, 2024 WL 184263 (E.D.N.Y. Jan. 17, 2024) (reducing Mr. Troy's hourly rate to $400, Mr. Schweitzer's hourly rate to $200, Ms. Troy's hourly rate to $0 for purely non-legal work, and Ms. Kilaru's hourly rate to $75, all before discounting);

---

[2] Although Plaintiff's attorneys also neglect to argue for or justify the travel time, and hourly rates for such travel time, in their application, they appear to seek reduced rates for travel and administrative tasks. *See* Dkt. No. 149 at 9 (referencing Mr. Schweitzer's hourly rate of "$200 for administrative tasks and travel"); Dkt. No. 148 at 38 (seeking compensation for 15.33 travel hours for Mr. Troy at $300 per hour). Notably, the billing records submitted with the Motion indicate that Mr. Schweitzer billed at a reduced rate for administrative tasks for a single entry for the preparation of trial exhibit binders. *See* Dkt. No. 148-1 at 12. Notwithstanding Plaintiff's lack of argument on the issue, "it is customary in this circuit to reduce attorney's fees by fifty percent for travel time." *Pennacchio v. Powers*, 05 CV 985 (RRM) (RML), 2011 WL 2945825, at *1 (E.D.N.Y. July 21, 2011). Additionally, the Court will impose a percentage discount to the travel time billed in this action given that Plaintiff has made no effort to justify the use of out-of-district counsel and the resultingly high proportion of compensable hours requested for travel. *Compare* Dkt. No. 148 at 38 (seeking compensation for 15.33 travel hours for Mr. Troy, or 12.65% of his total hours, and 11.25 travel hours for Mr. Schweitzer, or 9.65% of his total hours), *with Ethelberth v. Choice Sec. Co.*, No. 12 Civ. 4856 (PKC) (VMS), 2016 WL 11469536, at *12 (E.D.N.Y. Aug. 5, 2016) (finding "[w]ith respect to travel time" that "compensation at a one-half billing rate of $200 per hour [is] reasonable" where travel was 3 of 408 hours worked).

*Zang*, 2023 WL 2305934, at *3 (reducing Mr. Troy's hourly rate to $350, Mr. Schweitzer's hourly rate to $150, Ms. Troy's hourly rate to $100, and Ms. Kilaru's hourly rate to $75); *Sun v. Sushi Fussion Express, Inc.*, No. 16-CV-4840 (RPK) (LB), 2022 WL 2193441, at *2-4 (E.D.N.Y. June 17, 2022) (reducing Mr. Troy's hourly rate to $325, Mr. Schweitzer's hourly rate to $115, including for time trying the case, Ms. Troy's hourly rate to $100, and Ms. Kilaru's hourly rate to $75); *Singh v. Meadow Hill Mobile, Inc.*, 20 Civ. 3853 (CS) (AEK), 2021 WL 4312673, at *16 (S.D.N.Y. Aug. 9, 2021), *report and recommendation adopted*, 2021 WL 3862665 (S.D.N.Y. Aug. 29, 2021) (reducing Mr. Troy's hourly rate to $325, Mr. Schweitzer's hourly rate to $175, and Ms. Kilaru's hourly rate to $75).[3]

Consistent with the above analysis and the prevailing reasonable rates for experienced wage and hour attorneys in this District, the Court will award fee rates as follows: $300 per hour for Mr. Troy's hours worked; $150 per hour for Mr. Troy's travel time; $200 per hour for Mr. Schweitzer's hours worked; $100 per hour for Mr. Schweitzer's travel time; $125 per hour for Ms. Troy's hours worked on legal tasks and $80 for all others;[4] and $80 per hour for Ms. Kilaru's hours worked.

---

[3] Defendant rightly notes that in many of Plaintiff's cited cases, his attorneys achieved victory by default judgment where the hours billed were substantially lower than those at issue in the Motion. Dkt. No. 152 at 10-11.

[4] Although Ms. Troy has been admitted to practice law in New York for some of the period of time in which this case has been pending, Dkt. No. 148 at 31, a review of Plaintiff's billing records shows that her work was overwhelmingly administrative. *See, e.g.*, Dkt. No. 148-1 at 10 (between Mar. 24 and 27, 2023, Ms. Troy billed for one hour to "Contact Client re: Mediation"; "Call Clients in Advance of Mediation"; and "Remind Client of Mediation today"); *id.* at 11 (Ms. Troy billed one hour for "translate and scan plf payment receipt" and .25 hours to "Assist in Cancelation of Hotel Booking"). Upon review, other than one 4-hour entry for "depo/ defendant indi: Cai Qin Wang," Dkt. 148-1 at 8, all her entries are for administrative tasks. Accordingly, she is awarded a junior associate rate for the deposition and a paralegal rate for the remainder. Additionally, as discussed below, her hours are likely still inflated or could have been accomplished by less costly means, and thus both categories of hours are discounted as well.

### C.   Reasonably Expended Hours

Courts in this Circuit must perform "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994).  As Plaintiff notes, the Court must consider "the number of hours actually spent . . . that are deemed reasonably necessary to the successful outcome for the client . . . ."  Dkt. No. 149 at 6 (quoting *Briese Lichttechnik Vertriebs GmbH v. Langton*, No. 09 Civ. 9790 (LTS) (MHD), 2010 WL 3958737, at *1 (S.D.N.Y. Oct. 4, 2010) (citing *Arbor Hill*, 522 F.3d at 190)).  To accomplish this task, courts

> are alert for several categories of potentially unreasonable hours billed. First, "[p]laintiffs cannot recover for time spent by attorneys completing administrative tasks."  Second, a court "may reduce the fees requested for billing entries that are vague and do not sufficiently demonstrate what counsel did."  Third, courts may reduce fees "where the hours billed are disproportionate to the quantity or quality of the attorneys' work."

*Agureyev v. H.K. Second Ave. Rest., Inc.*, No. 17 Civ. 7336 (SLC), 2021 WL 847977, at *10-13 (S.D.N.Y. Mar. 5, 2021) (quoting *Changxing Li v. Kai Xiang Dong*, No. 15 Civ. 7554 (GBD) (AJP), 2017 WL 892611, at *20-21 (S.D.N.Y. Mar. 7, 2017), *report and recommendation adopted*, 2017 WL 1194733 (S.D.N.Y. Mar. 31, 2017) (reducing hours after discounting individual billers' raters, for an overall award of roughly 65% of requested fees)).  Reductions for "time [that] was not reasonably necessary to the outcome" for the client "are appropriate not only for work on unsuccessful claims and arguments, but also for inefficient or duplicative work."  *Langton*, 2010 WL 3958737, at *1 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433-37 (1983); *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998); *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987)).  When "dealing with items that are excessive, redundant, or otherwise unnecessary, the district court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application."  *Yuan v. &*

*Hair Lounge Inc.*, No. 18-CV-11905 (AT) (BCM), 2023 WL 4534872, at *3 (S.D.N.Y. June 28, 2023), *report and recommendation adopted*, 2023 WL 4535085 (S.D.N.Y. July 13, 2023) (quoting *Hines*, 613 F. App'x at 54-55).

**1.   Non-Compensable Time Requested**

Certain items on Plaintiff's timekeeper sheets are not appropriately compensated in this matter.  For example, Plaintiff requests compensation for 0.5 hours by Mr. Troy at his $650 hourly rate for drafting a letter in response to Southern District of New York District Judge Analisa Torres's  "Order to Show Cause and File" on July 9, 2019.  Dkt. No. 148-1 at 2.  However, the reason that Plaintiff's attorneys had to respond to such an order was that Plaintiff's attorneys improperly filed the Complaint in the Southern District of New York, which is a mistake that should not result in additional compensation to them.  Accordingly, the Court will reduce Mr. Troy's hours by this amount before applying the discount described below.

Additionally, Plaintiff requests compensation for 1.5 hours billed by Mr. Troy to "File the Complaint, Summons & Civil Cover Sheet" and "File Request for Issuance of Summons" on June 30, 2019, and 2.75 hours by Mr. Troy at his $650 hourly rate for "Travel and Serve Individual Defendants" on October 10, 2019.  Dkt. No. 148-1 at 1-2.  This is not work that an attorney should be doing, let alone a senior attorney, and accordingly the Court will reduce Mr. Troy's hours by this amount before applying the discount described below.

As yet another example, Plaintiff requests compensation for 2.25 hours of Mr. Troy's time at his $650 hourly rate for "Review the Mediator List Provided by the Court in the website and Update Access with their information and Confer with JT" on January 15, 2020, and "Confer with JT and Email OC with further information abt the mediator" on January 27, 2020.  Dkt. No. 148-1 at 3.  These entries appear to show Mr. Troy largely conducting administrative tasks, which are

tasks not appropriately compensated at any attorney billing rate, let alone the rate requested for Mr. Troy's time.  Additionally, the reference to "JT" is unexplained and the only biller with the initial JT is John Troy himself.  Plaintiff has thus failed to make the showing required to recover fees for this entry.  *See Collado*, 2015 WL 4737917, at *10.  Accordingly, Mr. Troy's hours will be reduced by this amount before applying the discount described below.

Plaintiff also requests compensation for work on motions that were never submitted to the Court.  First, Plaintiff's request includes several entries specifically referring to "Plaintiffs MCCC" which the Court understands to be a putative motion for class and collective certification.  *See* Dkt. No. 148-1 at 2, 5.  Specifically Plaintiff requests 1.86 hours worked by Ms. Troy at her $250 hourly rate, and 0.2 hours worked by Mr. Schweitzer at his $400 hourly rate.  *Id*.  No motion for class or collective certification was ever filed, and as such this work is not compensable.  *See, e.g.*, *Barfield*, 537 F.3d at 152; *Langton*, 2010 WL 3958737, at *1.  The Court will accordingly reduce Mr. Schweitzer's and Ms. Troy's hours by these amounts before applying the discount described below.  Additionally, Plaintiff seeks compensation for 1.25 hours of Mr. Troy's time at his normal hourly rate to "Draft Certificate of Default," and 1.75 hours of Mr. Troy's time to "Draft Affirmation support Request for Default for Corporate Defendant," Dkt. No. 148-1 at 2, which documents should be formulaic and not require managing attorney time at all, let alone for 3 hours.  Despite this, Plaintiff seeks compensation for an additional 3.25 hours of Mr. Troy's time at his regular rate for these same tasks less than six months later.  *See id*. at 4.  Because the Court cannot infer from these entries what time, if any, was spent on these tasks for the benefit of Plaintiff, and because Plaintiff has made no argument in his Motion supporting an award of fees for unfiled motions, the Court also reduces Mr. Troy's hours by these amounts, before applying a discount.[5]

---

[5] The Court also notes that Plaintiff's attorneys have likely included time to work on these unfiled

Finally, the Court notes that Plaintiff is requesting compensation for 6.33 hours of Mr. Schweitzer's time at his regular rate for "jury deliberations & verdict" at trial. Dkt. No. 148-1 at 13. As best the Court understands these entries, Plaintiff seeks compensation for the roughly 6 hours the jury spent deliberating, as well as the 0.33 hours during which the verdict was received in Court. While the latter is unproblematic, the former is concerning. The Court is aware of no authority that justifies awarding compensation for time Plaintiff's attorney spent waiting, in or around the courthouse, while the jury deliberated but during which time Mr. Schweitzer was not otherwise restrained from conducting business for his other clients and matters through everyday technology including phones and laptop computers. Since Plaintiff has cited no authority on this issue and the burden is on Plaintiff to justify the award of compensable hours, the Court will reduce Mr. Schweitzer's hours by 6.0 hours before applying a discount.

This results in a reduction of Mr. Troy's hours by 13.25, Mr. Schweitzer's hours by 6.2, and Ms. Troy's hours by 1.86 before the application of the discount described below.

**2. Appropriate Hours Discounted**

Having extracted several inappropriate requests for compensation, the Court will now consider the appropriate discount to apply to the remaining hours requested in light of the course and outcome of the litigation. As explained below, this litigation is properly characterized as relatively straightforward, with minimal motion practice, and Plaintiff's attorneys' conduct has been marred by questionable descriptions of their work, questionable uses of time, questionable attention to the form and substance of filings submitted to the Court, failure to comply with Court orders, and relatively minimal success in the litigation by any measure.

---

motions in other entries that do not explicitly include an "MCCC" of "Default" notation, and as such, these unfiled motions are also considered in the analysis for the overall hours discount discussed below.

First, this action has been devoid of much of the motion practice that is common in contested[6] wage and hour litigation and that would typically account for a substantial portion of a plaintiff's attorneys' hours billed.  For example, Defendants in this action did not file dispositive motions and thus there was no motion practice pursuant to Federal Rules of Civil Procedure 12 or 56.  Additionally, this action was initially brought as a putative class and collective action pursuant to the FLSA and NYLL, *see* Dkt No. 1 at 8-12, and Plaintiff's attorneys maintained those allegations in the Amended Complaint, Dkt. No. 70 at 8-12.  Despite this fact, Plaintiff's attorneys never brought a motion for class or collective certification, and instead the case proceeded to trial as an individual action on behalf of Plaintiff.  *See* Dkt. No. 102.

As for the motion practice that did occur in this case, the Court identifies a motion to compel discovery, Dkt. No. 51, and a motion to amend the complaint because Plaintiff misnamed Defendant Wang in the original Complaint and apparently neglected to note that it was her and not Defendant Yang who fired Plaintiff, Dkt. No. 56 at 4.[7]  Neither of these motions presented complex, novel, or cumbersome issues of law or fact requiring particularly extensive expertise or time.  The lion's share of motion practice in this case appears to be requests for extension of time to meet Court ordered events and deadlines.  *See, e.g.*, Dkt. Nos. 15, 37, 45, 47, 57, 64, 78, 83, 90, 120.  Indeed, the prevalence of extension requests was so great that the Court ultimately had to prohibit further extensions of the discovery deadline.  Dkt. No. 84.  Additionally, many of Plaintiff's requests for extensions concerned the time allotted to move for default judgment against certain Defendants, which motion Plaintiff also never filed.   Indeed, Plaintiff requests

---

[6] As opposed to cases in which a plaintiff recovers on a default judgment.

[7] Notably, Plaintiff requests compensation for 2.5 hours of Mr. Troy's hourly rate of $650 for submitting a reply to Defendants' opposition to Plaintiff's motion to amend the complaint, *see* Dkt. No. 148-1 at 6, despite that fact that Plaintiff was not entitled to a reply brief under the local rules, and the reply was stricken, Dkt. No. 63.

compensation for 1.91 hours of Mr. Troy's time at his regular rate to draft three letters requesting more time to move for a default judgment, *see* Dkt. No. 148-1 at 4, 6, in addition to the time Mr. Troy allegedly spent working on the substantive motion.  This overbilling is not new to Plaintiff's attorneys.  *See, e.g.*, *Chen v. Lilis 200 W. 57th Corp.*, No. 19-CV-7654 (VEC) (BCM), 2023 WL 9955610, at *11 (S.D.N.Y. Nov. 30, 2023), *report and recommendation adopted*, 2024 WL 749619 (S.D.N.Y. Feb. 23, 2024) ("John Troy, 'as the most experienced attorney with the highest billable rate, should not have been the one to perform the majority of the work in this relatively straightforward FLSA–NYLL case.'") (quoting *Singh v. Meadow Hill Mobile Inc.*, No. 20 Civ. 3853 (CS) (AEK), 2021 WL 3862665, at *17 (S.D.N.Y. Aug. 29, 2021)).

Second, the record of Plaintiff's attorneys' time submitted for the fee request is replete with entries that represent questionable uses of attorney and staff time, beyond those identified above. For example, Mr. Troy requests 1.53 hours at his normal hourly rate to "Draft Affidavit of Service[ ] for Defendants . . . and file to court."  Dkt. No. 148-1 at 2.  These tasks represent administrative work usually handled by a paralegal being billed at the managing partner rate, as well as a questionable amount of time to draft a form document.  Similarly, Mr. Schweitzer billed for 0.58 hours at his normal senior associate hourly rate for "Figure Out Trial Day 4 Lodging and Arrangement," *id*. at 12, despite this being a clearly administrative task.  Additionally, Plaintiff seeks compensation for over 12.5 hours of Ms. Troy's time at her normal hourly rate for entries marked "plf/ TRANSCRIPT, Review and Mark" over roughly two months.  *Id*. at 5-6.  This series of entries is not clear about what task was conducted, whether it was a task properly done by an attorney or staff, or whether the amount of time was reasonable.  This series of entries alone represents over one-third of the total time Ms. Troy billed to this matter.  *See* Dkt. No. 148 at 38 (seeking compensation for 35.51 hours of Ms. Troy's time as an associate attorney).  Plaintiff also

seeks compensation for 4.89 hours of Ms. Troy's time at her normal hourly rate for translation services, including one that merely reads "translate document." Dkt. No. 148-1 at 9, 11. It is unclear whether an associate attorney's services, as opposed to a more economical translation service, might have accomplished the goal at a more reasonable price. *See, e.g.*, *XBB, Inc.*, 2023 WL 2614143, at *5 ("the Court will not award any fees for Ms. Troy, because all of her time entries were for translation or interpretation work"). As another example, Plaintiff seeks compensation for 10.5 hours of Ms. Kilaru's time at her normal hourly rate for entries related to a "Recorded Zoom Meeting for Spa Nail" which entries do not explain what work was actually done or justify a high paralegal rate for such work. Dkt. No. 148-1 at 10. Furthermore, this series of entries alone represents about one-third of the total time Ms. Kilaru billed to this matter. *See* Dkt. No. 148-1 at 38 (seeking compensation for 32.56 hours of Ms. Kilaru's time as a managing clerk). The Court also notes two identical entries seeking compensation for 3.5 hours of Mr. Troy's time at his reduced travel rate for "Travel to Albany for Mediation" on April 6, 2023. Dkt. No. 148-1 at 10. It appears that one of these entries should instead have been "travel *from* Albany" or "travel *to* Queens" and as such is an appropriate entry, but the carelessness evidenced is emblematic of the Plaintiff's attorneys' minimal attention to detail with respect to their work on this case.[8]

Third, Plaintiff's Motion is subject to scrutiny based on the quality and nature of work done by Plaintiff's attorneys, which was apparent from Plaintiff's presentations to the Court in briefing and at trial. Courts in this Circuit commonly reduce hours overall where the work by attorneys is clearly duplicative, and as the Court has already noted, this case did not present novel or complex challenges to Plaintiff's attorneys. *See e.g.*, *Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 34-35

---

[8] The Court also notes that Plaintiff seeks reimbursement for 1.2 hours of Mr. Schweitzer's regular rate to "Revise Attorney Fee Invoice for Motion for Attorney Fees and Costs," Dkt. No. 148-1 at 13, despite the many errors and irregularities in the invoice submitted to the Court discussed herein.

(N.D.N.Y. 2015) (reducing fees requested by 66% for work on arguments in briefs "that Plaintiff had already expounded numerous times").  Nonetheless, Plaintiff seeks compensation for 4.5 hours at Mr. Troy's standard hourly rate for drafting the Complaint, *see* Dkt. No. 148-1 at 1, when the document is self-evidently the result of recycled work – indeed, the original Complaint in this case may be 20 pages, but the portions unique to this Plaintiff, as opposed to Troy Law's hundreds of other New York state wage and hour plaintiff clients, is limited to less than half of his pleading. *See* Dkt. No. 1 at 1-8.  Plaintiff also requests time for the litigation of Plaintiff's motion to amend the complaint, which was ultimately granted, however the briefing does not belie any complex work that justifies the roughly 8 hours Mr. Troy personally spent on the motion, *see id*. at 6, and in any event, the purpose of the amendment was to add more information and clarify allegations around Defendant Wang, who was misnamed in the amended complaint and whom the jury ultimately found was not liable.  This work cannot be said to have aided Plaintiff in his recovery from Defendants.

As another striking example of the low caliber of work and apparently inflated hours for which Plaintiff seeks compensation, Plaintiff's submission includes 1.5 hours of Mr. Schweitzer's time at his standard hourly rate for tasks related to updating and filing pretrial materials.  *See* Dkt. No. 148-1 at 10.  On its face, the only apparent concern with this entry is a senior associate billing at a standard rate for the ministerial task of filing.  However, the Court notes that Plaintiff's pretrial submissions before the instant trial bear an overwhelming resemblance to Plaintiff's pretrial submissions in anticipation of an earlier-scheduled trial in this matter before Judge McAvoy. *Compare* Dkt. Nos. 92-96, *with* Dkt. Nos. 110-14.  What's more, to the extent Mr. Schweitzer did expend effort revising the pre-trial submissions, it was not a particularly effective use of time, as Mr. Schweitzer ultimately objected to the use of certain jury instructions and portions of the verdict

form which he himself had proposed in Plaintiff's most recent pretrial materials. *See, e.g.*, Dkt. No. 112 at 9-10 (requesting inclusion of questions concerning whether Defendants' violations were willful or not). Plaintiff's attorney's lack of preparation in this regard and others contributed to the parties and the Court dedicating far more time to what should have been straightforward issues, *see, e.g.*, Dkt. No. 148-1 at 13 (seeking compensation for 3.33 hours of Mr. Schweitzer's time at his regular hourly rate for the charge conference), and such an outcome should not inure to the benefit of the party who, at least in part, caused the additional time to be spent.

A final example, or set of examples really, of the low caliber of work by Plaintiff's attorneys in this case is apparent from the instant motion alone. As Defendants point out, "even the instant motion is full of errors demonstrating Troy Law's lack of care, including misspellings in section headings, and reference to a Plaintiff that [Defendants] can only presume was a prior client of the firm." Dkt. No. 152 at 9; *see, e.g.*, Dkt. No. 149 at 12 (section heading). In fact, the Motion actually references two separate individuals as plaintiffs who do not appear to have ever been a party to or otherwise a part of this action, "Plaintiff Jian Wu" and "Plaintiff Fen Biao Cai." Dkt. No. 148 at 3. Furthermore, the Motion references Plaintiff "hiring a Spanish interpreter for trial," Dkt. No. 149 at 12, when in fact the language spoken by Plaintiff, several of his attorneys, and the Defendants at trial was Mandarin Chinese, *see* Dkt. No. 148-1 at 14 (invoices for "Chinese interpretation"). Additionally, the Motion failed to comply with the Court's Order setting the motion briefing schedule because Plaintiff failed to "include the terms of any agreement about fees for the services for which the claim [for fees] is made."[9] Dkt. No. 153. Despite these many

---

[9] When the Court ordered Plaintiff to comply with the earlier order setting the fee motion briefing schedule, Dkt. No. 153, Plaintiff filed a heavily redacted copy of a "Legal Services Agreement." Dkt. No. 154-1. The Court cannot credit Plaintiff's noncompliance as a good faith error because it is apparent from unredacted section headings in the redacted agreement that many terms explicitly discussing attorney's fees had been redacted in direct violation of the Court's

problems with the Motion, Plaintiff seeks 5.5 hours for Mr. Troy's time at his regular hourly rate for drafting the Motion and supporting documents,[10] even though these documents appear formulaic, barely containing any indication of editing for the instant case as opposed to any of the other motions for attorney's fees filed by Plaintiff's attorneys in their many cases.  For example, the majority of Plaintiff's memorandum of law is comprised of a string citation of Troy Law's other cases, largely out of District, or general statements of the law in this Circuit for recovery of attorney's fees.  *See* Dkt. No. 149 at 6-12.  Indeed, upon careful review, it appears that the only portion of the memorandum that is unique to the instant case is the opening sentence, which identifies the proper Defendants at issue.  *See* Dkt. No. 149 at 6; *cf. id.* at 12 (identifying the wrong interpreter language).  While the Declaration in support of the Motion does indicate more custom work done, the effort appears marginal, and likely could have been done by a paralegal or very junior associate rather than Mr. Troy himself.  *See, e.g.*, Dkt. No. 148 at 4-35 (more than 25 pages of bullet points listing cases worked on by Mr. Troy, Mr. Schweitzer, and Ms. Troy).  Indeed, it appears that in an effort to reduce the time and energy put into the Motion, Plaintiff's attorneys chose to only customize the first two and final pages of their template declaration in support of fees, *see* Dkt. No. 148 at 1-2, 39, which would explain the references to the improper plaintiffs on the third page, *id.* at 3.  Suffice it to say, the Court has undoubtedly spent more time reading through the Motion than Plaintiff's attorneys spent working on it.

---

Orders.  *See, e.g.*, Dkt. No. 154-1 at 2 ("6. Division of Attorney's Fees"), 4 ("18. Arbitration of Fee Dispute" and "19. Attorney's Fees and Costs in Action on Agreement").  The Court was further concerned by other irregularities in the submission, including Plaintiff's decision to redact the identity of the parties to the agreement, the nature of the representation, provisions discussing settlement, and the effective date, as well as the fact that the agreement does not appear to be signed by Mr. Troy.  Accordingly, the Court ordered Plaintiff to comply with Fed. R. Civ. P. 54(d)(2)(B)(iv) for a third time.  Dkt. No. 155.  Plaintiff ultimately complied, but the Court maintains concerns over the form and substance of the agreement.  *See* Dkt. No. 156-1.

[10] Not including Mr. Schweitzer's 1.2 hours revising the supporting invoice, Dkt. No. 148-1 at 13.

The Court must also take a moment to comment on Plaintiff's attorneys failure to abide by this Court's orders.  First, the Court has already commented on Plaintiff's failure to comply with the Court's June 17, 2024 Order regarding the substance of the instant Motion.  *See supra* n.10. Second, Defendants correctly point out that United States Magistrate Judge Christian F. Hummel had to warn Plaintiff's attorneys that their delays in discovery and scheduling mediation were in violation of Court orders and could result in sanctions.  *See* Dkt. No. 152 at 7 (citing Dkt. Nos. 69, 69-1).  Most concerning to the Court, however, is the fact that Plaintiff's attorneys appear to have violated the spirit, if not the letter, of this Court's Order that the parties engage in settlement negotiations in good faith.  *See* Dkt. No. 102.  At the settlement conference held by Magistrate Judge Hummel, the sticking point was not the amount of money Plaintiff thought was fair to settle his claims; rather, the amount of money allocated to Plaintiff's attorneys as a part of any settlement. *See* Text Minute Entry of March 28, 2023 (noting that "Plaintiff's counsel advise[d] the Court that the issue of attorneys fees needs to be addressed in order to reach an overall settlement").  Eight months later, at the first pre-trial conference before the undersigned, the Court inquired again as to settlement and the parties represented that they were willing to discuss "the possibility of [reaching a] settlement on damages and Plaintiff then filing a motion for attorneys fees." *See* Text Minute Entry of November 28, 2023.  At a second pre-trial conference held the following week, the Court inquired about the parties' efforts and the parties informed the Court that they were too far apart, yet again due to Plaintiff's requirement that attorney's fees be included in the settlement amount, or that Defendants set aside a certain amount in escrow against an eventual award of attorney's fees.  Thus, it appears that Plaintiff's attorneys disregarded their representation to the Court that they would attempt to settle Plaintiff's claims because they were primarily concerned with recovering their own fees.  *See, e.g.*, *Wang v. Chapei LLC*, 849 F. App'x 360, 361 (3d Cir.

2021) (observing that "[f]ee-shifting statutes can be abused by attorneys who over-litigate a case once they have confidence that their client will receive an award – no matter how small" and affirming an order denying fees to Troy Law for critical deficiencies in their fee petition). This precise conduct has been the focus of prior decisions in this Circuit, including one wherein a court dismissed the case when the plaintiff had already received more than the allegedly unpaid wages and "the only driving force in this case appears to be Troy Law's desire to get a cut of the settlement proceeds." *Yu Zhang v. Aria Asian Corp.*, No. 18 CV 12330 (VB), 2019 WL 6684060, at *4 (S.D.N.Y. Dec. 6, 2019); *see also Bao Guo Zhang v. Shun Lee Palace Rest., Inc.*, No. 17-CV-00840 (VSB), 2021 WL 2414872, at *3 (S.D.N.Y. June 11, 2021) (observing that "the lack of plausible legal basis or putative benefit for Troy Law's clients underlying the firm's multiple objections to the settlements of [other plaintiffs] bespeaks a lack of good faith" and imposing monetary sanctions). While such a severe sanction is not necessarily appropriate here, the Court cannot and will not condone such dereliction of duty to a client, whether paying out of pocket or by contingency. *See Walker v. Iron Sushi LLC*, 752 Fed. App'x 910, 915 (11th Cir. 2018) ("a rejected settlement offer is an appropriate factor to consider in assessing the reasonableness of a request for attorney fees").

Finally, as to the most important factor the Court must consider in resolving the Motion, *see Barfield*, 537 F.3d at 152, Plaintiff's attorneys achieved only a relative level of success for Plaintiff, particularly when considered with respect to the abandoned class and collective claims and settlement offers by Defendants. As discussed in the Court's previous Order on Defendants' good faith and Plaintiff's entitlement to prejudgment interest, the jury awarded Plaintiff an overtime underpayment amount of $3,874.50, when Plaintiff asked at trial for over $12,000 in overtime compensation damages. *See* Dkt. No. 145 at 5 & n.2. At the same time, the jury found

that Defendants were not liable for other NYLL wage and hour violations for minimum wage pay or spread of hours pay, both which Plaintiff attempted to prove at trial, and found that Defendant Wang was not liable at all. Dkt. No. 139 at 2-3. Thus, Plaintiff's verdict at trial for $3,874.50 in compensatory damages, and $9,800.00 in statutory damages represents a fraction of the total theory of damages Plaintiff's attorney's advanced at trial, or in court conferences leading up to trial, let alone any theory of damages originally contemplated when the action was one for putative class and collective damages. *See Barfield*, 537 F.3d at 136, 152-53 (holding that the district court did not abuse its discretion in reducing attorney's fees by 50% "to account for plaintiff's failure to secure collective action certification" although she prevailed on individual FLSA claims).

Consistent with Plaintiff's agreement with Troy Law, Dkt. No. 156-1 at 1, it appears that Troy Law seeks this Court's award of fees in addition to one-third of the net recovery represented by this Court's earlier judgment for $19,913.22, Dkt. No. 146, thus reducing Plaintiff's net recovery to $13,275.48. *See* Dkt. No. 154 at 1 ("[P]laintiff's counsel is to retain one third (1/3) of the Net Recovery. Additionally, the retainer states that plaintiff shall retain all fees and costs that are solely awarded by the court in any fee application made."). Although this practice has been commented on before in this Circuit, there is no clear answer as to whether this arrangement constitutes a double recovery for the same work since this Court's award of fees is meant to fairly compensate victorious counsel. While it is clear that "a contingency fee arrangement cannot act as a ceiling on otherwise reasonable attorneys' fees in FLSA cases," *Lee v. Mani & Pedi Inc.*, No. 20 CIV. 10787 (JCM), 2022 WL 3645118, at *14 (S.D.N.Y. Aug. 24, 2022) (quotation omitted), where a plaintiff's attorneys claim entitlement to a portion of the plaintiff's judgment, and separately seek additional reasonable compensation for the same work, neither the FLSA nor NYLL authorize a double recovery. *See* 29 U.S.C. § 216(b) ("The court in such action shall, *in*

*addition to* any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.") (emphasis added); N.Y. Lab. Law § 215(2)(a) (providing for "costs and reasonable attorneys' fees").  In the similar context of a civil rights law fee shifting provision, the Second Circuit has definitively held that "to the extent counsel receives payment of the [42 U.S.C. § 1988] statutory award, his claim for services rendered under his contingency fee arrangement with his client shall be deemed paid and satisfied." *Wheatley v. Ford*, 679 F.2d 1037, 1041 (2d Cir. 1982).[11]  Since Plaintiff indicates that Troy Law is entitled to one-third of Plaintiff's judgment in compensation for their work on Plaintiff's case, the Court will deduct the difference of $6,637.74 from the final fee award for the instant Motion.

The Court finds that in light of the above-described conduct of Plaintiff's attorneys throughout this litigation, the majority of the time requested by Plaintiff's counsel is unreasonable. Furthermore, the many court decisions in this Circuit criticizing Plaintiff's attorneys for their conduct in litigation generally, and for the amount of their fee requests specifically, indicates that such strongly worded decisions have largely fallen on deaf ears.  *See Sanchez v. 156-40 Grill LLC*, No. 15-CV-5081 (CBA) (LGD), 2024 WL 2855719, at *2 (E.D.N.Y. June 6, 2024) ("In light of the troubling history of excessive and improper Troy Law fee applications that have been slashed time and again by many judges, it is clear to the Court that what we've got here is failure to communicate.") (quotation omitted).  As a result, the Court will impose a blanket reduction in the

---

[11] The Second Circuit has subsequently applied this rationale to employment actions.  *See Dominic v. Consol. Edison Co. of New York*, 822 F.2d 1249, 1259 (2d Cir. 1987) (observing that "Congress has in no way indicated that the policies underlying [29 U.S.C. § 216(b)] differ from those underlying [42 U.S.C. § 1988]" and applying *Wheatley* to an employment discrimination case); *accord Ayres v. 127 Rest. Corp.*, No. 96 CIV. 1255 (DC), 1999 WL 328348, at *1 (S.D.N.Y. May 21, 1999), *aff'd*, 201 F.3d 430 (2d Cir. 1999) ("as a substantive matter, the law on attorneys' fees is no different in FLSA cases than it is in employment discrimination cases").

hours requested by Plaintiff, after the adjustments described above, of 60 percent.[12] *See, e.g.*, *id.* at \*6, 9-10 (reducing Troy Law's requested fees by 65% "[i]n light of the troubling history of excessive and improper Troy Law fee applications that have been slashed time and again by many judges"); *De La Cruz Rosas v. Just Salad 60 Third LLC*, No. 18-cv-7342 (JGK) (BCM), 2023 WL 5423982, at \*13 (S.D.N.Y. Aug. 4, 2023), *report and recommendation adopted*, 2023 WL 5390985 (S.D.N.Y. Aug. 22, 2023) (reducing compensable hours for Troy Law by 70% overall and 80% for John Troy in light of "(i) egregious overbilling by Troy Law, (ii) its failure to certify any form of collective or class action, (iii) its failure to obtain any recovery at all for half of its clients, and (iv) the loss of multiple individual claims asserted even by the surviving plaintiffs"); *see also Cajero Torres v. Sushi Sushi Holdings Inc.*, No. 19 Civ. 2532 (PAE) (RWL), 2022 WL 2788655, at \*1, 20-21 (S.D.N.Y. July 15, 2022) (reducing hours by 90% "in light of plaintiffs' counsel's marginal success . . .; counsel's attempt to recover for projects that are non-compensable; counsel's substandard advocacy and disregard of their clients' interests; and counsel's persistently problematic, if not alarming, staffing and timekeeping practices"); *Williams v. Epic Security Corp.*, 368 F. Supp. 3d 651, 660-62 (S.D.N.Y. 2019) (reducing hours for two attorneys by 66% and hours for a senior partner by 70% to account for "the number of prevailing Plaintiffs" and "the fact that even the prevailing Plaintiffs were not successful on all their claims").  This results in a reasonable fee award to Plaintiff's attorneys of $22,602.52, as described in the table below:

---

[12] Earlier in the litigation of this matter, Defendants' retained counsel was less than cooperative in the litigation process, which resulted in some of the time expended by Plaintiff's attorneys, and as such the Court has not implemented a higher blanket hours reduction of the type some courts in this Circuit have imposed on Plaintiff's attorneys for litigation conduct similar to their conduct in this case.

|  | Requested rate | Requested hours | Adjusted rate | Reduced hours | 60% hours adjustment | Award |
|---|---|---|---|---|---|---|
| J. Troy | 650 | 105.88 | 300 | 92.63 | 37.05 | $  11,115.00 |
| J. Troy (travel) | 300 | 15.33 | 150 | 15.33 | 6.13 | $     919.50 |
| A. Schweitzer | 400 | 105.28 | 200 | 99.08 | 39.63 | 7,926.00 |
| A. Schweitzer (travel) | 200 | 11.25 | 100 | 11.25 | 4.50 | $     450.00 |
| T. Troy (attorney) | 250 | 4.00 | 125 | 4.00 | 1.60 | $     200.00 |
| T. Troy (admin.) | 250 | 31.51 | 80 | 29.65 | 11.86 | $     948.80 |
| P. Kilaru | 200 | 32.56 | 80 | 32.56 | 13.02 | $    1041.60 |

Sub-total   $   22,600.90

-   $     6,637.74

Total award   $   15,963.16

In conclusion, the Court notes that, as opposed to the amount of fees requested, this fee award is more in line with Troy Law's recovery in another case in this District in which it represented the same Plaintiff and achieved a marginally higher recovery for Plaintiff's injuries. *See Weidong Li v. Ichiban Mei Rong Li Inc.*, No. 1:16-CV-0863 (DEP), 2017 WL 1750374, at *2-3 (N.D.N.Y. May 4, 2017) (noting that in settling claims similar to those at issue in the instant action, "plaintiff's counsel has advised that, of the [$25,000] settlement amount, a total of $1,256.57 will be applied to cover the costs and out-of-pocket disbursements incurred by counsel in representing plaintiff [and of] the remaining sum of $23,743.43, one-third, or $7,914.48, will be paid to Troy Law, PLLC, the law firm representing plaintiff, and the balance of $15,828.95 will inure to the benefit of plaintiff").  The outcome for Mr. Li in this case, $13,275.48, is thus similar

to, although lower than, the prior case and should not result in a windfall for Troy Law, which a higher fee award would represent.

### D.   Costs

The Motion also seeks costs of $5,561.10 in "reimbursement for the court filing fees as well as expenses incurred for case filing, research, postage, process servers, transcript, Plaintiffs' transportation and accommodation relevant to the case, and hiring a Spanish interpreter for trial." Dkt. No. 149 at 12.  Although Defendants do not take specific issue with this portion of Plaintiff's Motion, the Court nonetheless makes a careful examination of Troy Law's submission.  In doing so, the Court has identified one entry that appears duplicative and is otherwise unsupported by Plaintiff's request: there are two entries for December 11, 2023 translation/interpretation costs plus parking, one entry seeking $180 and the other seeking $214.13. Dkt. No. 148-1 at 14.  Because Plaintiff's submission supports the latter entry and amount, *see* Dkt. No. 148-2 at 3, the Court will strike the request for $180.  Dkt. No. 148-1 at 14.  Although many of the remaining requests are unsupported by the Motion and attachments thereto, including several hotel nights during trial and several invoices for interpreter services, *e.g.*, *compare* Dkt. No. 148-1 at 14 (seeking $585 for interpreter Arthur Kwok; five trial hotel nights), *with* Dkt. No. 148-2 at 1-7 (containing no invoices from an interpreter Arthur Kwok; only one trial hotel receipt), and "Troy Law is well aware of the need for such evidence, having been denied expenses in the past on this ground[,]" *De La Cruz Rosas*, 2023 WL 5423982, at *14 (collecting cases), the Court does not find such amounts to be unreasonable and will award the remaining costs requested, for a total of $5,381.10.

## V.   CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiff's motion for attorney's fees and costs, Dkt. No. 147, is

**GRANTED in part** to the extent that Plaintiff is entitled to an additional **$15,963.16 in attorney's fees and $5,381.10 in costs** and **DENIED in all other respects**; and the Court further

ORDERS that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules.

IT IS SO ORDERED.

Dated: August 14, 2024
        Albany, New York

Anne M. Nardacci
U.S. District Judge